GENERAL DATA CORP., APPELLEE, *v.* PORTERFIELD, TAX
COMMR., APPELLANT.

(No. 69-524—Decided March 25, 1970.)

· *Messrs. Lanier, Guy, Walker & Chatfield* and *Mr. Henry H. Chatfield,* for appellee.

*Mr. Paul W. Brown,* attorney general, and *Mr. Jon A. Ziegler,* for appellant.

DUNCAN, J. The facts are not in dispute, and the principles of law surfacing for consideration are not obscure. An examination of the law and the facts raises the following questions.

## I.

Is the tax sought to be assessed by the Tax Commissioner levied on activity in interstate commerce?

Section 5741.02, Revised Code, which provides for levy of a use tax, reads in pertinent part: " (A) * * * an excise tax is hereby levied on the storage, use, or other consumption in this state of tangible personal property * * *." Section 5741.02(C)(2) then excepts certain purchases from taxation. The word "purchased" as used in Section 5741.02(C) is defined to include rentals. Section 5741.01(D), Revised Code.

The use tax is charged to the consumer, storing, using or otherwise consuming the property in this state. Section 5741.02(B), Revised Code. However, the seller is required to collect the tax (Section 5741.04, Revised Code), and he is personally liable if he fails to collect the tax (Section 5741.11, Revised Code).

Section 5741.02(C), Revised Code, excludes certain property from the tax as follows:

"The tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:

" * * *

" (3) Property, the storage, use, or other consumption of which this state is prohibited from taxing by the Constitution of the United States * * *."

The Tax Commissioner urges that the assessment

levied on the monthly $2.50 per room payment from the Ohio lessees to General Data does not affront the commerce clause of the Constitution of the United States (Section 8, Clause 3, Article I),* and therefore is valid under Section 5741.02(C) (3), Revised Code.

The question of the validity of the application of the Ohio use tax statute in a situation involving an alleged unconstitutional burden on interstate commerce is well discussed in *Tri-City Broadcasting Co.* v. *Bowers,* 169 Ohio St. 126. We agree with the conclusion reached in that case that ''such tax is imposed on all property purchased for storage, use, or consumption in this state at a time when such property has come to rest within this state and is a nondiscriminatory tax which, when applied to the instrumentalities of interstate commerce, does not constitute a prohibited burden upon such commerce.'' A reading of a number of cases cited by Judge Herbert in *Tri-City* reveals that the state's power to levy a tax on property which subsequently will be used in interstate commerce depends upon the existence of a *taxable event* or a *taxable moment.* See *McGoldrick,* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33, 47, 84 L. Ed. 565 (''taxation of property, shipped interstate, before its movement begins, or after it ends is not a forbidden regulation''); *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167, 177, 83 L. Ed. 586 (''We think there was a taxable moment * * *. A tax on property or upon a taxable event in the state, apart from operation, does not interfere.''). See, also, *Pacific Telephone & Telegraph Co.* v. *Gallagher,* 306 U. S. 182, 83 L. Ed. 595.

The Board of Tax Appeals apparently recognized the basic legal tenets of the *Tri-City* decision and stated: ''The record shows the terminals were delivered to and installed at each of the inns in Ohio, and the rental payments were made by the Ohio inns * * *. The terminals, upon arrival and installation in Ohio, were at rest in Ohio and were in use in Ohio and therefore this transaction was taxable.

---

*''The Congress shall have power * * * to regulate commerce * * * among the several states * * *.''

See *Tri-City Broadcasting Company* v. *Bowers,* 169 Ohio St. 126.''

However, the use tax in the case now before us was not levied and assessed on the transaction wherein the property came to rest in Ohio but was levied and assessed on the rental charge made by appellant both for the use of the terminals and their use in the computerized system by the various Holiday Inns.

Both parties and the Board of Tax Appeals apparently observe the salutariness of the principle of the *Tri-City case, supra.* The applicability of the law to the facts in the instant case is in keen dispute.

The Tax Commissioner levied the assessment upon the basis of the monthly $2.50 per room amount paid by the lessees to General Data, ostensibly because that sum is the amount paid for the rental of the terminals. Under Section 5741.01(D), Revised Code, a rental charge, in a proper case, may be the amount on which the use tax is based. See *Alside* v. *Bowers,* 174 Ohio St. 463.

The testimony of the witnesses and a reading of the sample standard lease used for the installation of the terminals leads to the conclusion that the monthly charge, $2.50 per room, is not merely a charge for the terminal but is a charge for the installation and utilization of a large computerized room reservation system used in interstate commerce. The major factor in this system is the computers in Memphis, Tennessee. Recognition of the necessity of local terminals does not take away the general intent of payment for participation in an international reservation system. A leased terminal in each motel is only a small part of a large sophisticated service used in interstate commerce.

We fully subscribe to the taxability of the terminals, at some discoverable rate, when they come to rest in Ohio and before their use in the integrated system in interstate commerce. When, however, the assessment is based on a charge of $2.50 per room per month after the terminals are used in interstate commerce as a part of an international computerized system of motel room reservations,

such assessment is an unlawful tax burden on interstate commerce, which is prohibited by Section 8, Clause 3, Article I of the Constitution of the United States and Section 5741.02(C)(3), Revised Code.

## II.

Are the terminals excepted from use taxation because they are being used directly in making retail sales?

General Data successfully argued to the board that the terminals come within the exception provided by Section 5741.02 (C)(2), Revised Code, which excepts "tangible personal property, the acquisition of which, if made in Ohio, would be a sale *not* subject to the [sales] tax * * *." (Emphasis added.) Therefore, the crucial question is whether or not the terminals, if sold, would be subject to the sales tax.

Section 5739.02, Revised Code, initially levies a sales tax on all retail sales made within the state. For the purposes of taxation, however, the term "retail sales" is defined, *inter alia*, in Section 5739.02 as "all sales except those in which the consumer's purpose is: * * * to use or consume the thing transferred * * * directly in making retail sales * * *." We must decide what is meant by the phrase "use or consume the thing transferred * * * directly in making retail sales." The answer hinges upon the meaning of "making retail sales."

In searching for that meaning we initially look to the statutory definition of "making retail sales." That phrase is defined in Section 5739.01(P), Revised Code. See *Jewel Companies, Inc.*, v. *Porterfield*, 21 Ohio St. 2d 97. However, the exclusion of "preliminary acts of promoting or soliciting retail sales" from taxable transactions in Section 5739.01(P) conflicts with Section 5739.01(B) which specifically states that "*all* transactions by which lodging by a hotel is or *is to be* furnished to transient guests" are sales. (Emphasis added.)

Since transient guests are the retail consumers of a hotel (motel), the retail sales of a hotel (motel) are within the definition of "sale" in Section 5739.01(B), *supra*. Any machines used or consumed directly in making such sales

are within the exception of Section 5739.01(E)(2), Revised Code. Thus, in this case, if the terminals are used by the inns in making sales for a motel's consumers, they fit within the exception.

The Tax Commissioner argues that the terminals are not used in making retail sales because they are used in making reservations; that reservations are not sales because they lack consideration; and that, because there are no sales, the terminals are not used in making retail sales. Such an argument is untenable because it ignores the definition of "sale" in Section 5739.01(B), stated above.

A reservation is one of the many transactions inextricably entwined in the furnishing of lodging; a reservation is directly involved in the motel's room rentals, which are its retail sales; and therefore the terminals employed in making reservations are used in making retail sales.

The use of the terminals to cancel reservations does not change the situation, since a cancellation is merely a transaction necessary in the furnishing of lodging. In addition, the use (about 1% of the total use) of the terminals to send administrative data does make the exception inapposite. Where equipment is employed *primarily* in a way which excepts it from taxation, an incidental use otherwise will not destroy its excepted status. *Mead Corp.* v. *Glander*, 153 Ohio St. 539, paragraph two of the syllabus.

Certain of the inns in Ohio are owned by the parent corporation, Holiday Inns of America (company owned); others are owned privately and operate under a franchise agreement (franchised) with Holiday Inns of America. The Tax Commissioner, in effect, argues that the statutory exception afforded to property used directly in making retail sales is not available, since a company-owned inn may use the system to reserve a room which will be sold by an entirely different business entity and is thereby only indirectly using the terminal.

The testimony adduced before the board illustrates that there exists between both company-owned and franchised inns a mutual agency for the reservation and sale of lodging by those who use the system. A franchised inn has the authorty to act on behalf of a company inn in

operating the terminal to inquire, through the Memphis computers, as to the availability of a room in a company inn and, upon notice of availability, reserve it for a customer even though the sale may be finally consummated by the company inn. The agency between inns operates in the same method in reverse. In some situations, where a customer appears at one inn seeking a guaranteed reservation at another inn, for which he pays at the time of request, a deposit is collected and forwarded to the other inn where the customer will be lodged.

### III.

General Data further proposes that the reservation system is categorized as a personal service not subject to Ohio use taxation. This contention was not decided by the Board of Tax Appeals, and in view of the conclusion reached herein, it is unnecessary to decide this question.

The decision of the Board of Tax Appeals is neither unreasonable nor unlawful, and is, therefore, affirmed.

*Decision affirmed.*

TAFT, C. J., O'NEILL, HERBERT and CORRIGAN, JJ., concur.

SCHNEIDER, J., concurs in paragraph one of the syllabus but dissents from the judgment.

MATTHIAS, J., not participating.

