QUOTRON SYSTEMS, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as *Quotron Systems, Inc. v. Limbach*
(1992), 62 Ohio St.3d 447.]

(No. 90–2497—Submitted October 16, 1991—Decided February 5, 1992.)

*Baker & Hostetler, Edward J. Bernert, George H. Boerger, Christopher J. Swift; O'Melveny & Myers, Ben E. Benjamin* and *David T. Beddow,* for appellant.

*Lee I. Fisher,* Attorney General, and *Barton A. Hubbard,* for appellee.

---

*Per Curiam.* R.C. 5739.01 and 5739.02 tax sales of automatic data processing ("adp") and computer services, and R.C. 5741.02 imposes a complementary use tax " * * * on the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided. * * * " R.C. 5741.01(N) defines "other consumption" as " * * * includ[ing] receiving the benefits of a service by the person who purchased the service." Thus, the purchase of adp and computer services is subject to the use tax.

R.C. 5739.01(Y) defined "automatic data processing and computer services," until January 10, 1985, to include " * * * providing direct access to computer equipment by remote or proximate access for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment * * *," Am.Sub.H.B. No. 291, 140 Ohio Laws, Part II, 2872, 3220, and, after this date, to include " * * * providing access to computer equipment for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment * * *." Sub.S.B. No. 112, 140 Ohio Laws, Part I, 225, 233.

Quotron first argues that the statute imposes the tax on the service only when the vendor rendering the service processes another's data or permits the customer to use the vendor's equipment to process the customer's data.

The statute's language does not support this reading. The statute includes as an adp or computer service the service that Quotron provides—access to Quotron's computer equipment to examine or acquire stock price data stored in or accessible to that computer equipment. Consequently, the statute taxes the service that Quotron sells.

Next, Quotron argues that this tax is a burden on interstate commerce. (To reiterate, the commissioner had assessed Quotron because Quotron had not collected the use tax.)

In *Natl. Geographic Soc. v. California Bd. of Equalization* (1977), 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631, the United States Supreme Court allowed California to require a nonprofit corporation to collect California's use tax on items sold in the society's mail-order operation. The court searched for an adequate nexus between the society and the taxing state that would permit the state to impose the use-tax collection liability on the society. The court rejected the argument that the society's activity sought to be taxed must have a nexus with the taxing state. Instead, the court held that a nexus simply between the society and the state would be sufficient. It found this nexus in

the existence of two society offices in the state that arranged for advertising in the society's magazine. Although those offices did not sell the magazines or items available in the mail-order operation, the court held that the society should have collected the tax because the two offices took advantage of municipal services such as fire and police protection. As in the instant case, the court held the society liable for the full amount of the tax because it had failed to collect it from its customers.

Here, a definite link exists. Quotron owns equipment that it delivers to subscribers in Ohio, constructed two communication concentrators in Ohio, and employs personnel in Ohio to install and maintain equipment. Under *Natl. Geographic Soc.*, Ohio can require Quotron to collect the tax from its customers, and Quotron should have collected it. Having failed to do so, it is itself liable. R.C. 5741.11.

Nevertheless, Quotron argues that the tax is unconstitutional under *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326. We doubt that Quotron has the requisite standing to raise this challenge because the tax is not levied on it. Yet, we address this argument because Quotron is personally liable for failing to collect it.

Under *Complete Auto Transit*, a tax is not a burden on interstate commerce and, thus, is constitutional, if the activity to be taxed is sufficiently connected to the state to justify the tax, the tax is fairly related to benefits provided the taxpayer, the tax does not discriminate against interstate commerce, and the tax is fairly apportioned. We conclude that this use tax passes these tests.

First, Ohio has a sufficient nexus with the taxed activity. The information travels on telephone lines in Ohio to equipment situated in Ohio to subscribers located in Ohio. This is a substantial nexus.

Furthermore, Ohio's use tax is fairly related to state-provided services because Quotron receives fire and police protection for its equipment and the availability of public roads to benefit its employees. The tax does not discriminate against interstate commerce because the tax compensates the state for sales tax imposed on similar in-state transactions. *D.H. Holmes Co., Inc. v. McNamara* (1988), 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21. Finally, the tax is fairly apportioned because it provides a credit against use tax for transactions in which a sales tax was paid to other states. R.C. 5741.02(C)(5).

In further elaborating on the fair-apportionment criterion, the Supreme Court, in *Goldberg v. Sweet* (1989), 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607, stated that the tax must be internally and externally consistent. "To be internally consistent, a tax must be structured so that if every State were to

impose an identical tax, no multiple taxation would result." *Id.* at 261, 109 S.Ct. at 589, 102 L.Ed.2d at 617. Here, if every state taxed the receipt of information via computer equipment, as Ohio does, only one state, the state of receipt, would tax each transaction.

To be externally consistent under *Goldberg,* a state may tax " * * * only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Id.* at 262, 109 S.Ct. at 589, 102 L.Ed.2d at 617. According to *Goldberg,* Ohio's use tax reasonably reflects the way that subscribers purchase this service. Subscribers receive the service in Ohio and pay the tax here. At bottom, however, is the credit Ohio allows for sales taxes paid to other states. Under *Goldberg,* this credit provision avoids actual multiple taxation, and, thus, the tax does not threaten interstate commerce. Consequently, the use tax satisfies *Complete Auto Transit.*

Finally, we also reject Quotron's contention that *General Data Corp. v. Porterfield* (1970), 21 Ohio St.2d 223, 50 O.O.2d 468, 257 N.E.2d 359, is dispositive. *General Data* is a vestige of the era in which any tax on interstate commerce was *per se* unconstitutional. *Complete Auto Transit* has laid to rest this rule; a state may now tax interstate commerce to require commerce to fairly pay its way.

Accordingly, we affirm the decision of the BTA.

*Decision affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. I dissent because I find the majority's interpretation of the scope of R.C. 5739.01 to be broader than intended by the General Assembly.

The majority opinion considers the transactions in question to be taxable because they fall under the portion of R.C. 5739.01(Y)(1) that defines automatic data processing and computer services to include "providing access to computer equipment for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment." Although I agree that a plain reading of that phrase alone would seem to encompass appellant's activities, I find that a reading of the *entire statute* does not support the conclusion that providing stock quotations electronically is a taxable transaction.

In analyzing whether a particular activity is a taxable service transaction, it is necessary to consider first whether "the true object of the transaction is the

receipt by the consumer of automatic data processing or computer services rather than the receipt of personal or professional services to which automatic data processing or computer services are incidental or supplemental." R.C. 5739.01(B)(3)(e). In the BTA decision and order from which Quotron appealed, the BTA specifically agreed with Quotron's assertion that the true object of the transaction is instant access to financial price information, not the provision of data processing or computer services. Board of Tax Appeals Decision and Order (Nov. 23, 1990), at 8. The BTA concluded, however, that the transaction is nevertheless taxable because (1) it does not fall within the personal or professional service exemptions because the transaction does not involve "cognitive thought," *id.* at 7, (2) the customer's true object is "singularly met and satisfied by and through a taxable service," *id.* at 8, (3) the customer's true object could not be realized or attained without the examination and acquisition of data stored in or made accessible by Quotron's computer, *id.*, and (4) the statutory definition of data processing and computer services in R.C. 5739.01(Y)(1) is a "mirror perfect" description of Quotron's services, *id.* at 9. These reasons, which the majority appears to have accepted without comment, appear to result in an unwarranted and unfair expansion of the state's taxing authority to include most services that are accomplished electronically.

Consider for a moment a service with which most of us are familiar—access to a banking account through an automatic teller machine ("ATM"). Applying the BTA's reasoning to that service, an ATM transaction for which a customer is charged would be a taxable automatic data processing and computer service. The transaction is entirely performed by computer; there is no "cognitive thought." Thus, the ATM transaction would not fall within the personal and professional service exemptions in R.C. 5739.01(Y)(2) as narrowly interpreted by the BTA. The true object, instant access to account data, is singularly met and satisfied through a taxable service that can be accomplished only through the examination of data in a bank computer. Additionally, R.C. 5739.01(Y)(1), when read outside the context of the entire statute, is a mirror-image description of an ATM transaction. Thus, under the reasoning adopted by the board and implicitly accepted by the majority, a sales tax should be imposed upon every ATM transaction for which a customer is charged.

A statute should be construed as a whole, not by examining selective phrases. *Dupps Co. v. Lindley* (1980), 62 Ohio St.2d 305, 307, 16 O.O.3d 354, 356, 405 N.E.2d 716, 718. Accord R.C. 1.42 and 1.47. If R.C. 5739.01 is read in its entirety, it is clear that its provisions are directed to the taxation of a sale of access to a computer, not the taxation of a service that happens to permit the customer access to selected data through the employment of

computer technology. The basis for taxing a service should not rest on whether the provider has chosen to meet the customer's demand for instant access by permitting access to its computer. Indeed, had Quotron chosen to broadcast the same data to local terminals equipped with software designed to generate locally accessible displays, the majority would have had a difficult time justifying the taxation of the broadcast information because customer access to Quotron's computer would have been lacking. I find it inconceivable that the legislature intended the determination of whether a certain transaction is taxable to turn on whether the service is provided through a certain manner of electronic communication.

Because I cannot believe that the legislature intended that R.C. 5739.01 be interpreted so broadly as to encompass transactions in which a supplier of information uses a computer as a communication device, I dissent from the majority opinion. I hope the General Assembly will address this issue to narrow the scope of the state's tax laws with respect to the use of modern technology, and correct the BTA's and the majority's mistaken interpretation.