[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3 449.]

PPG INDUSTRIES, INC., APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *PPG Industries, Inc. v. Tracy*, 1996-Ohio-116.]

*Taxation—Use tax on automobiles purchased and modified into high-performance vehicles by manufacturer of automotive paint and coatings—Cars transported to races throughout nation for use as pace cars and display—Sufficient nexus to Ohio, when—R.C. 5741.02(A), applied.*

(No. 94-2656—Submitted October 12, 1995—Decided February 7, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-M-415.

_____

{¶ 1} PPG Industries, Inc. ("PPG"), appellant, a manufacturer of automotive paint and coatings, purchased several automobiles during the audit period, July 1, 1987 through December 31, 1991, modified them into high-performance vehicles, and operated them as pace cars for the IndyCar and IndyLight race car series. PPG purchased and modified a Buick Riviera, a Chevrolet Corvette, a Toyota All-Trac, an Oldsmobile Calais, a Ferrari, a Buick Regal, a Ford Mustang SVO, a Dodge Stealth, a Pontiac Grand Prix, a Chrysler minivan, a Chrysler Le Baron, an Oldsmobile Cutlass, a Chevrolet Camaro, a Chevrolet El Camino, a GMC Sierra, and a Cadillac Allante. PPG participated in this pace car program to gain access, and thus sell its paint products, to automobile executives, who were extremely interested in auto racing.

{¶ 2} PPG transported these pace cars to races throughout the nation, including races in Ohio. It typically transported fourteen vehicles to each race. PPG displayed ten cars to showcase its paint products and provide race track rides for PPG's customers and guests. It furnished one car as the pace car to start the race and control the field if necessary. PPG provided one car to the chief steward of the race and, finally, kept two cars in its van as replacements.

**{¶ 3}** PPG transported these vehicles throughout the country in trucks. It kept the vehicles, when not at races or at off-season repairs, at its Strongsville, Ohio facility. PPG owned a high bay building there and could economically store them pending transportation to race sites. In preparation for transport, PPG "staged" the vehicles at Strongsville. According to the testimony, in staging, PPG completed a three-page checklist that included measuring torque values, fluid levels, and cylinder compression. PPG then loaded the trucks in correct order for transport to the race site. In addition to staging, PPG occasionally exhibited the cars for its customers in Strongsville. Ten percent of the pace car use occurred at Ohio races.

**{¶ 4}** The Tax Commissioner, appellee, concluded that PPG stored the vehicles in Ohio and assessed use tax of $444,390.16 against these pace cars. PPG appealed to the Board of Tax Appeals ("BTA"), claiming a Commerce Clause violation. The BTA disagreed with PPG and, with certain exceptions, affirmed the commissioner's order as to the disputed purchases. The BTA ruled that PPG retained complete dominion and control over the cars while in Ohio and had the privilege of using the cars in every sense of the use tax statute. The BTA further ruled that this use constituted substantial nexus with the state. The BTA rejected PPG's further argument that it must apportion the use tax to render it externally consistent under *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326.

**{¶ 5}** The cause is now before this court upon PPG's appeal as of right.

_____

*Jones, Day, Reavis & Pogue*, *Todd S. Swatsler*, *Maryann B. Gall* and *Jeffrey S. Sutton*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Janyce C. Katz*, Assistant Attorney General, for appellee.

_____

***Per Curiam.***

{¶ 6} PPG claims that this use-tax assessment violates the federal Commerce Clause because it does not satisfy two prongs of *Complete Auto Transit, Inc. v. Brady, supra*--the substantial-nexus and fair-apportionment prongs. We find no such violations and affirm the BTA's decision.

{¶ 7} In dormant Commerce Clause cases, according to *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 630 N.E.2d 329, we first find a taxable event in Ohio and then apply the *Complete Auto Transit* test.

{¶ 8} In determining whether a taxable event occurred in Ohio, R.C. 5741.02(A) levies "an excise tax *** on the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." R.C. 5741.01(C) defines "use" as "the exercise of any right or power incidental to the ownership of the thing used."

{¶ 9} We agree with the BTA that PPG exercised rights or powers incidental to the ownership of these pace cars in Ohio. Ten percent of the pace cars' actual track time occurred in Ohio, and PPG stored and staged the vehicles in Ohio. Staging included preparing the vehicles for transport to race sites. PPG also exhibited the cars for customers in Ohio. All these activities are "uses" of the vehicles in Ohio.

{¶ 10} In applying the *Complete Auto Transit* test, we also find that these taxed activities had sufficient nexus to Ohio. These cited activities had a significant connection to Ohio. PPG operated the pace cars ten percent of the time in Ohio, inspected and prepared them for transport in Ohio, and stored them for significant times in Ohio. This is "'nexus' aplenty." See *D. H. Holmes Co. v. McNamara* (1988), 486 U.S. 24, 32-33, 108 S.Ct. 1619, 1624, 100 L.Ed.2d 21, 28-29.

{¶ 11} PPG next argues that, under the Commerce Clause, Ohio must apportion its use tax on property principally used in other states to reflect only the in-state use of the property. It claims, under *Goldberg v. Sweet* (1989), 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607, that Ohio's credit for sales or use taxes paid

to other states does not satisfy the external consistency requirement of the Commerce Clause.

{¶ 12} However, in *Quotron Systems, Inc. v. Limbach* (1992), 62 Ohio St.3d 447, 584 N.E.2d 658, we held that Ohio's use tax does satisfy the fair-apportionment criterion because of this credit. "Under *Goldberg*, this credit provision avoids actual multiple taxation, and, thus, the tax does not threaten interstate commerce." *Id* at 450, 584 N.E.2d at 660.

{¶ 13} This conclusion agrees with *D. H. Holmes Co. v. McNamara, supra* ("The Louisiana taxing scheme is fairly apportioned, for it provides a credit against its use tax for sales taxes that have been paid in other States." *Id.* at 31, 108 S.Ct. at 1623, 100 L.Ed.2d at 28), and *Oklahoma Tax Comm. v. Jefferson Lines, Inc.* (1995), 514 U.S. _____, ____ 115 S.Ct. 1331, 1342, 131 L.Ed.2d 261, 277, fn. 6. In *Jefferson Lines*, the court noted that discrete-event taxes containing credits for a similar tax paid to another state satisfy the fair-apportionment criterion. *Id.* at _____, 115 S.Ct. at 1342-1343, 131 L.Ed.2d at 277-278. Indeed, the commissioner here credited the use tax on several assessed purchases because PPG paid a sales tax to Michigan. See, also, *Whitcomb Constr. Corp. v. Commr.* (1984), 144 Vt. 466, 479 A.2d 164, and *Ex parte Fleming Foods of Alabama, Inc. v. Dept. of Revenue* (Ala. 1994), 648 So.2d 577.

{¶ 14} Finally, PPG contends that Sections 1983 and 1988, Title 42, U.S. Code, entitle it to attorney fees because the commissioner deprived it of its constitutional rights. Since PPG did not prove a violation of the Commerce Clause, this argument fails. Moreover, in *Natl. Private Truck Council, Inc. v. Oklahoma Tax Comm.* (1995), 515 U.S. _____, 115 S.Ct. 2351, 132 L.Ed.2d 509, the United States Supreme Court held that these code sections provide no basis for relief if the state has an adequate remedy at law. Since Ohio provides an appellate procedure to determine these constitutional claims, PPG does not receive attorney fees.

{¶ 15} Accordingly, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., dissents.

———————————