MARC GLASSMAN, INC., APPELLEE, v. LEVIN, TAX COMMR., APPELLANT.

[Cite as *Marc Glassman, Inc. v. Levin,* 119
Ohio St.3d 254, 2008-Ohio-3819.]

(No. 2007–0328—Submitted February 5, 2008—Decided August 5, 2008.)

MOYER, C.J.

{¶ 1} The Tax Commissioner appeals from the decision of the Eighth District Court of Appeals that reversed the Board of Tax Appeals and held that the Tax Commissioner erred when he assessed use tax against Marc Glassman, Inc. ("Marc Glassman") for the audit period January 1, 1999, through September 30, 2001. The assessment relates to services Marc Glassman purchased from National Data Corporation and Envoy Corporation. The issue is whether the purchased services constituted "electronic information services," which are subject to sales and use tax pursuant to R.C. 5741.02(A)(1), 5741.01(M), 5739.01(X), and 5739.01(B)(3)(e).

{¶ 2} Marc Glassman owns and operates a chain of discount pharmacies in northern Ohio, and it contracted with National Data and Envoy in order to ascertain whether particular purchases of prescriptions by its customers were covered by insurance. The court of appeals held that because Marc Glassman obtained only insurance approval and did not obtain access to the insurance company data, Marc Glassman did not purchase electronic information service as defined by the statute. The Tax Commissioner requested, and we granted, discretionary review of that judgment. The commissioner contends that the

court of appeals' decision contravenes the case law of this court. We disagree with that assertion and conclude that the court of appeals correctly analyzed and applied the law. We therefore affirm.

I

{¶ 3} The record demonstrates that when a customer attempted to fill a prescription at a Marc Glassman store, the customer would typically show an insurance card to the attendant, who would enter information from the insurance card into a computer terminal either owned or leased by Marc Glassman. The information would travel "via a private dedicated line and modem" to a "frame relay network" operated by a telecommunications company, which then routed the transmission to one of Marc Glassman's service providers, National Data or Envoy. Upon receipt of the transmission from Marc Glassman, the provider would route the transmission to a particular insurance company.

{¶ 4} The provider then expected an "authorization response" from the insurance company. If that response was not forthcoming within 15 seconds, the provider terminated the transmission. When the insurance company made a decision and responded, it would send a message stating whether the prescription coverage was approved, the amount of the copay, and the authorization number for reimbursement to the pharmacy. The provider received this information from the insurance company and transmitted it back to the computer terminal at Marc Glassman's store.

{¶ 5} We are reviewing the Tax Commissioner's determination that by purchasing the service just described, Marc Glassman was a consumer of a taxable service. Pursuant to R.C. 5741.02(A)(1), Ohio imposes use tax on "the benefit realized in this state of any service provided," and the definition of "providing a service" in R.C. 5741.01(M) and 5739.01(X) ties that term to the provision of the services that are included in the definition of "sale" under the sales tax. R.C. 5739.01(B)(3)(e) includes sales of electronic information services as taxable sales, and that is the only legal basis the Tax Commissioner asserted for issuing the assessment.

{¶ 6} Pursuant to R.C. 5739.01(B)(3)(e), electronic information services are provided when (a) the services are provided for "use in business" and (b) the "true object of the transaction is the receipt by the consumer" of those services. "Electronic information services" is defined in R.C. 5739.01(Y)(1)(c) as "providing access to computer equipment by means of telecommunications equipment for the purpose of either" (1) "[e]xamining or acquiring data stored in or accessible to the computer equipment" or (2) "[p]lacing data into the computer equipment to be retrieved by designated recipients with access to the computer equipment." Subsection (2) is not at issue in this case; rather, the issue is whether the activity described in subsection (1) occurs. In other words, we must decide whether

Marc Glassman's provider furnished access to computer equipment by means of telecommunications equipment for the purpose of examining or acquiring data stored in or accessible to the computer equipment. For the reasons set forth in the next section, we conclude that the statute does not apply to the transaction that creates the basis for this appeal.

## II

{¶ 7} The Board of Tax Appeals' findings of "basic fact" furnish the basis for applying the statutory definition of "electronic information services," but the determination whether the services in this case are within the statutory definition involves an "inference of an ultimate fact" that is subject to judicial review. *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 142, 48 O.O.2d 169, 249 N.E.2d 892. The Board of Tax Appeals found that the "insurance companies would respond regarding insurance eligibility, amount of co-pay, and an authorization number to National Data Health and/or Envoy, with this information, in turn, being relayed to appellant." *Marc Glassman, Inc. v. Wilkins* (Jan. 20, 2006), BTA No. 2005-K-82, 2006 WL 200654, *1. That finding is predicated on a record that includes the testimony of Marc Glassman's vice president of information systems, Brian Kendro, who testified that when Marc Glassman's service provider sent the customer/patient information to the insurance company, the insurance company would "somehow make a determination if that patient is covered and if that drug is covered and then send a response back to us, back through [our service provider]." On cross-examination, Kendro confirmed that Marc Glassman received information about "eligibility, the amount of the copay for the prescription, [and] an authorization number for reimbursement to the pharmacy."

{¶ 8} Although the Board of Tax Appeals' finding of basic fact accords with the evidence, the Board of Tax Appeals erred in its ultimate conclusion that Marc Glassman purchased electronic information service. What Marc Glassman received from the insurance companies through its provider was not *access to the data* maintained by the insurance companies, but rather *a conclusion formulated by the insurer* in response to a routine request. This conclusion did not consist of pure data; rather, it was a preliminary determination that the purchase was covered by insurance—a determination that was even documented with an "authorization number."

{¶ 9} It is easy to imagine a different set of facts under which the Tax Commissioner could appropriately assess the tax. If, for example, the pharmacy's inquiry led to a list of names of insured persons appearing on the screen, so that the pharmacy could determine whether the customer's name was on the list—that would involve accessing the database. In this case, the insurer

accessed its own data and then gave a formulated answer to the provider, which relayed the answer to the pharmacy.

{¶ 10} Because the service Marc Glassman purchased did not involve its obtaining access to computer equipment for the purpose of "examining or acquiring" the insurance data, that service was not an electronic information service.

### III

{¶ 11} Our conclusion is consistent with case law. The Tax Commissioner contends that *Quotron Systems, Inc. v. Limbach* (1992), 62 Ohio St.3d 447, 584 N.E.2d 658, supports imposing the tax in this case. But *Quotron* did not address the issue the taxpayer presents in this case. Rather, most of *Quotron* focused on Quotron's Commerce Clause argument.

{¶ 12} The only statutory issue that we addressed in *Quotron* was whether the tax obligation arose "only when the vendor rendering the service processes another's data or permits the customer to use the vendor's equipment to process the customer's data." Id., 62 Ohio St.3d at 448, 584 N.E.2d 658. In resolving that issue, we held that the statutory definition of the taxable services encompassed "the service that Quotron provides—access to Quotron's computer equipment to examine or acquire stock price data stored in or accessible to that computer equipment." Id.

{¶ 13} Quotron gathered publicly available financial information and made the information available through computer and telecommunications equipment to its customers. Unlike in the present case, the Board of Tax Appeals in *Quotron* found that Quotron's service was "clearly antithetical" to services that involve interpretation or analysis of data. *Quotron Systems, Inc. v. Limbach* (Nov. 23, 1990), BTA No. 88–A–377, 1990 WL 235893, *3, affirmed (1992), 62 Ohio St.3d 447, 584 N.E.2d 658. We had no occasion in that case to address a contention that the customers were not accessing the database itself, because it appears that Quotron did not advance that argument.

{¶ 14} Nor did we resolve the issue presented in this case when we decided *Amerestate, Inc. v. Tracy* (1995), 72 Ohio St.3d 222, 648 N.E.2d 1336, and *MIB, Inc. v. Tracy* (1998), 83 Ohio St.3d 154, 699 N.E.2d 44. In *Amerestate,* we characterized the evidence as showing that "a customer is given 'remote terminal access' to the information in Amerestate's computer data base and the right to 'download and print' such information for the customer's own use in real estate appraisals or listings." Id., 72 Ohio St.3d at 222, 648 N.E.2d 1336.

{¶ 15} Similarly, our description of the service provided in *MIB* shows a series of steps ending with "the results of the search [being] put on a disc at MIB's front-end computer," after which "MIB's front-end computer contacts the mem-

ber's computer and transmits the results of the search." *MIB*, 83 Ohio St.3d at 155, 699 N.E.2d 44. To be sure, the transmission of data in *MIB* was initiated by an inquiry from one of MIB's members, but in stark contrast to the present case, MIB's members "[sought] access to MIB's objective information database," and there was, in *MIB*, "no evidence that the members are given an interpretation or analysis of that information." *MIB, Inc. v. Tracy* (June 6, 1997), BTA No. 1995–B–109, 1997 WL 1909666, *11, affirmed (1998), 83 Ohio St.3d 154, 699 N.E.2d 44. In the present case, the insurance company does give an "interpretation or analysis" of its own data by authorizing coverage for the purchase of a particular prescription and stating its conclusion as to the amount of copay required.

{¶ 16} In analyzing the service provided in this case, we have determined that the Board of Tax Appeals' decision that is most directly on point is *PNC Bank, Ohio, N.A. v. Tracy* (July 7, 1995), BTA No. 93–T–1316, 1995 WL 412414. In that case, the Board of Tax Appeals held that credit-card authorizations received by a merchant through computer and telephonic link-ups did not constitute the provision of taxable service. That was so because the merchants "[did] not receive access to appellant's computers through [the service provider]" and as a result "the merchant [could] not examine or acquire any credit card information stored in or available to appellant's computers." Id. The present case differs in no material respect from the situation described in *PNC Bank*, with the legally insignificant distinction that this case involves insurance verification instead of credit-card authorizations.

{¶ 17} In its decision, the Board of Tax Appeals acknowledged the factual similarity between this case and *PNC Bank*. The reason the Board of Tax Appeals did not follow its earlier decision was not because of any factual distinction, but because of the Board of Tax Appeals' perception that the law had changed. The Board of Tax Appeals observed that *PNC Bank* concerned transactions that occurred before the enactment of Am.Sub.H.B. No. 152 in 1993, which amended the law by replacing the former "automatic data processing and computer services" with three different categories of taxable service: "automatic data processing," "electronic information service," and "computer service." Am. Sub.H.B. No. 152, 145 Ohio Laws, Part II, 3341, and Part III, 4287, 4294; see current R.C. 5739.01(B)(3)(e) and 5739.01(Y). The Board of Tax Appeals interprets this change as expanding the scope of taxable transactions, but we see no reason either on the face of the legislation or elsewhere to concur in that view.

{¶ 18} To the contrary, the amendments appear to have split the former broad category of "automatic data processing and computer services" into three separate categories without thereby expanding the overall scope of the sales tax. Previously, the law had defined "automatic data processing and computer services" to include "providing access to computer equipment for the purpose of

\* \* \* examining or acquiring data stored in or accessible to such computer equipment." Am.Sub.H.B. No. 152 made that portion of the old definition the touchstone of the new category "electronic information services." If anything, the amendments constricted the scope of taxation by tying the taxable service to a telecommunications link.

## IV

{¶ 19} For the foregoing reasons, we agree with the Eighth District Court of Appeals' conclusion that the service Marc Glassman purchased did not constitute taxable "electronic information service," and we therefore affirm the decision of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

PFEIFER and CUPP, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 20} The transactions in this case are quite similar to the transactions held taxable in *Quotron Sys., Inc. v. Limbach* (1992), 62 Ohio St.3d 447, 584 N.E.2d 658. The Tax Commissioner concluded that Marc Glassman, Inc.'s "description of the services provided by NDC or Envoy are quite similar to internet access services [which are taxable when used in business], in that NDC and Envoy provided an electronic conduit through which information flowed from computers that they had access to by way of telecommunications equipment." Nothing in the record convinces me otherwise. I would reverse the judgment of the court of appeals.

CUPP, J., concurs in the foregoing opinion.

---

Buckingham, Doolittle & Burroughs, L.L.P., Steven A. Dimengo, and David W. Hilkert, for appellee.

Nancy Hardin Rogers, Attorney General, William P. Marshall, Solicitor General, Elise W. Porter and Robert J. Krummen, Deputy Solicitors, and Barton A. Hubbard, Assistant Attorney General, for appellant.

Baker & Hostetler, L.L.P., Edward J. Bernert, and Elizabeth A. McNellie, urging affirmance for amici curiae, Ohio Pharmacy Association, Ohio Chamber of Commerce, and Ohio Council of Retail Merchants.