**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Total Renal Care, Inc. v. Harris*, Slip Opinion No. 2024-Ohio-5685.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5685

TOTAL RENAL CARE, INC., APPELLANT, *v*. HARRIS, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Total Renal Care, Inc. v. Harris*, Slip Opinion No. 2024-Ohio-5685.]**

*Taxation—R.C. 5751.02—Commercial-activity tax—R.C. 5751.033(I)—Ohio Adm.Code 5703-29-17(A)—Ohio Adm.Code 5703-29-17(C)(28)—Healthcare provider's gross receipts for service of providing dialysis to patients in Ohio properly sitused to Ohio because purchasers of dialysis services received benefit of their purchase in Ohio—Board of Tax Appeals' decision affirmed.*

(No. 2023-1056—Submitted July 9, 2024—Decided December 9, 2024.)

APPEAL from the Board of Tax Appeals, Nos. 2019-848 and 2019-849.

_____

DONNELLY, J., authored the opinion of the court, which FISCHER, DEWINE, STEWART, BRUNNER, and DETERS, JJ., joined.  KENNEDY, C.J., concurred in judgment only.

**DONNELLY, J.**

**{¶ 1}** Total Renal Care, Inc. ("TRC"), appeals a decision by the Board of Tax Appeals affirming Tax Commissioner Patricia Harris's denial of its refund claims under Ohio's commercial-activity-tax law. The commercial-activity tax ("CAT") is imposed on each person having gross receipts with an Ohio situs. *See* R.C. 5751.01(G) and 5751.02(A). The question here is whether TRC's gross receipts have an Ohio situs for the periods during which TRC has requested a tax refund. We conclude that they do and affirm the board's decision.

## I. BACKGROUND

### A. *Statutory and regulatory background*

**{¶ 2}** The CAT is "levied . . . on each person with taxable gross receipts for the privilege of doing business in this state." R.C. 5751.02(A). Subject to exceptions not applicable here, "gross receipts" is defined as "the total amount realized by a person, without deduction for the cost of goods sold or other expenses incurred, that contributes to the production of gross income of the person." R.C. 5751.01(F).

**{¶ 3}** For CAT purposes, "[t]axable gross receipts" are "gross receipts sitused to this state under [R.C. 5751.033]." R.C. 5751.01(G). But "[b]ecause business is conducted across state and international boundaries, imposing the tax often raises the thorny issue of how to properly allocate receipts to Ohio for taxation." *Defender Sec. Co. v. McClain*, 2020-Ohio-4594, ¶ 18. "Receipts are sitused to Ohio according to taxable categories." *NASCAR Holdings, Inc. v. McClain*, 2022-Ohio-4131, ¶ 7, citing R.C. 5751.033. To help navigate the situsing

of gross receipts from the sale of services generally,[1] the General Assembly has instructed that such receipts

> shall be sitused to this state in the proportion that the purchaser's benefit in this state with respect to what was purchased bears to the purchaser's benefit everywhere with respect to what was purchased. The physical location where the purchaser ultimately uses or receives the benefit of what was purchased shall be paramount in determining the proportion of the benefit in this state to the benefit everywhere.

R.C. 5751.033(I).

{¶ 4} The tax commissioner has the authority to "adopt rules to provide additional guidance to the application of [R.C. 5751.033]." R.C. 5751.033(K). Exercising this authority, the tax commissioner promulgated Ohio Adm.Code 5703-29-17. *See* 2006-2007 Ohio Monthly Record 2019-2033 (effective Dec. 11, 2006). Ohio Adm.Code 5703-29-17(A) provides that "[e]xcept as otherwise set forth in [the] rule, the physical location where the purchaser ultimately uses or receives the benefit of what was purchased is paramount in determining the proportion of the benefit received in Ohio." The rule goes on to specify situsing standards for various services. The standard applicable to healthcare services provides:

> If healthcare services are performed in Ohio, one hundred
> per cent of the gross receipts are sitused to Ohio. If a healthcare

---

1. The CAT law contains a separate category for situsing gross receipts from the sale of transportation services by a motor carrier, *see* R.C. 5751.033(G), but that category of services is not at issue here.

service is provided partly in this state and outside this state, a reasonable allocation for the services performed in Ohio must be made.

For example, a German resident comes to have a surgery performed at a hospital in Ohio. One hundred per cent of that gross receipt is an Ohio taxable gross receipt.

Ohio Adm.Code 5703-29-17(C)(28).[2]

### B. Factual background

**{¶ 5}** TRC, whose parent company is DaVita, Inc., provides dialysis to patients with chronic kidney disease and end-stage renal disease. Dialysis is a procedure that removes and cleans a patient's blood, then places the blood back into the patient's system. Patients receiving dialysis rely on this procedure because their kidneys cannot effectively clean their blood. Treatments occur through the patient's physical connection to a machine called a dialyzer, last about three to four hours, and typically occur under the supervision of a healthcare professional. The dialysis treatments at issue in this case were performed entirely in Ohio.

**{¶ 6}** TRC, however, also performs certain operations outside Ohio that support its provision of dialysis treatment. Relevant here, TRC provided laboratory services through its parent company, DaVita; these services were performed in Florida. In addition, many of TRC's administrative services are provided outside Ohio. These include back-office support, billing and collections, accounting, tax and regulatory compliance, data processing, information technology, and procurement of medical equipment and supplies. All the administrative services at

---

2. The tax commissioner promulgated a similar rule for the purpose of situsing gross receipts associated with laboratory services. *See* Ohio Adm.Code 5703-29-17(C)(49). That rule is not at issue here.

issue were provided through DaVita and occurred at one of DaVita's central business offices in California, Colorado, Pennsylvania, Tennessee, or Washington.

{¶ 7} For the period April 1, 2012, through December 31, 2014, TRC filed quarterly CAT returns and made corresponding CAT payments. Originally, TRC reported all the revenue that it had received from its Ohio locations. But TRC later filed two refund claims with the tax commissioner. In the first, TRC sought a refund of $28,011 for the period April 1, 2012, through June 30, 2012. In the second, TRC sought a refund of $365,660 for the period July 1, 2012, through December 31, 2014. TRC asserted that it was owed a refund because some of the gross receipts on which it had paid the CAT had a situs outside Ohio since the services underpinning those receipts—namely, laboratory and administrative services—all were performed outside Ohio.

{¶ 8} The tax commissioner denied both refund claims, and the board affirmed. BTA Nos. 2019-848 and 2019-849, 2023 WL 4839097, *1. The board determined that TRC's laboratory and administrative services constituted healthcare services under Ohio Adm.Code 5703-29-17(C)(28). 2023 WL 4839097 at *3-4. But notwithstanding that rule, the board determined that for situsing purposes under R.C. 5751.033(I), it was required to determine the physical location where the purchaser benefited from what was purchased. 2023 WL 4839097 at *3-4. That location, the board concluded, was Ohio. *Id.* Last, the board determined that even if Ohio law permitted situsing the laboratory and administrative services outside Ohio, it would be inappropriate to do so here because TRC had not provided supporting documentation to justify such situsing. *Id.* at *5. TRC appealed.

{¶ 9} At oral argument before this court, TRC conceded that the only service it provides to its patients is dialysis and that the gross receipts at issue in this case flowed from its provision of dialysis services. TRC admitted that while it also performs laboratory and administrative functions, those activities support and exist solely for its provision of dialysis services to patients in Ohio.

**{¶ 10}** We may rely on a party's representations at oral argument in deciding the party's case. *See, e.g.*, *Cincinnati Fed. S. & L. Co. v. McClain*, 2022-Ohio-725, ¶ 37. And we do so in conducting our analysis here.

## II. ANALYSIS

**{¶ 11}** When reviewing decisions on appeal from the board, we determine whether the board's decision was reasonable and lawful. R.C. 5717.04; *see also Adams v. Harris*, 2024-Ohio-4640, ¶ 23. A dispute about the meaning of a statute presents a question of law that we review de novo. *Progressive Plastics, Inc. v. Testa*, 2012-Ohio-4759, ¶ 15. And as we have said,

> [t]he determination of situs under the statutory standard involves an '"inference of an ultimate fact"' from the basic facts shown by the evidence. *Marc Glassman, Inc. v. Levin*, 119 Ohio St.3d 254, 2008-Ohio-3819, 893 N.E.2d 476, ¶ 7, quoting *Ace Steel Baling, Inc. v. Porterfield*, 19 Ohio St.2d 137, 142, 249 N.E.2d 892 (1969). And the reasonableness of the inference from basic facts to an ultimate fact is a question of law on review. *SFZ Transp., Inc. v. Limbach*, 66 Ohio St.3d 602, 604-605, 613 N.E.2d 1037 (1993).

*Defender Sec.*, 2020-Ohio-4594, at ¶ 20.

**{¶ 12}** In its first proposition of law, TRC contends that the tax commissioner's rule that applies to the situsing of receipts for healthcare services, Ohio Adm.Code 5703-29-17(C)(28), should control the legal analysis in this case. Under this argument, TRC seeks to establish that its gross receipts for the relevant period should be sitused according to the location where the services were performed and that when a healthcare service "is performed both in and outside Ohio, a reasonable allocation for the services is required." TRC acknowledges that R.C. 5751.033(I) instructs that gross receipts from services shall be sitused

according to the location where the benefit of the purchased service was received. But it argues that the rule, not the statute, should drive our analysis. First, TRC asserts that the rule constitutes a reasonable interpretation of the statute. And second, it asserts that because an agency must follow its own rules, the tax commissioner is precluded from arguing for an analysis predicated on anything other than the rule she promulgated. *See State ex rel. Cuyahoga Cty. Hosp. v. Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28 (1986) ("administrative agencies are bound by their own rules until those rules are duly changed"). For her part, the tax commissioner assigns primacy to the statute, saying that its plain meaning controls our analysis here. To the extent any reference to the rule is necessary, she says the rule must be understood to require what the statute requires—that situsing decisions should be based on the physical location where the purchaser benefited from the service purchased.

{¶ 13} We find no conflict between the statute and the administrative rule. We begin by reviewing the plain language of the statute. *State v. Bertram*, 2023-Ohio-1456, ¶ 11. In doing so, we do not ask "'what did the general assembly intend to enact, but what is the meaning of that which it did enact.'" *Maple Hts. v. Netflix*, 2022-Ohio-4174, ¶ 17, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. We thus "presume that the legislature says in a statute what it means and means in a statute what it says there." (Cleaned up.) *State ex rel. Lee v. Karnes*, 2004-Ohio-5718, ¶ 27. When a statute's meaning is unambiguous, our task is at an end—we must apply the statute as written. *Id.* at ¶ 23.

{¶ 14} R.C. 5751.033(I) provides that gross receipts from the sale of services "shall be sitused to this state in the proportion that the purchaser's benefit in this state with respect to what was purchased bears to the purchaser's benefit everywhere with respect to what was purchased." The General Assembly left no one guessing about how to apply this provision. Rather, the General Assembly

went out of its way to instruct those who apply the statute to home in on the physical location where the purchaser ultimately benefits from what was purchased, underscoring that the purchaser's physical location is "paramount" to the inquiry, R.C. 5751.033(I).

{¶ 15} A simple example helps illustrate what the statute requires. Imagine that you contracted with a lawn-care company to mow your lawn located in Ohio. Under the statute, the lawn-care company must situs to Ohio the gross receipts it receives from selling the mowing service to you because you—as the purchaser— benefited from that service in Ohio. But now imagine you have an out-of-state vacation home with a lawn that needs to be mowed. Were the same lawn-care company to mow that lawn, the gross receipts it received for selling that service to you would not be situsable to Ohio, because you benefited from that service in another state (i.e., outside Ohio).

{¶ 16} The statute's meaning is plain on its face: When determining the location to which gross receipts should be sitused, the taxing authority must look at the location where the purchaser benefited from the purchased service. That is enough to answer the question, "Where should TRC's gross receipts for the relevant period be sitused?" They should be sitused in the location where the benefit of the service was received by the purchaser.

{¶ 17} And it does not take much inquiry to conclude that the benefits of TRC's dialysis services were received by patients being treated in Ohio. As TRC conceded during oral argument, it provides dialysis services and the gross receipts at issue here came from its provision of those services. Neither TRC nor DaVita provide laboratory or administrative services as stand-alone services. Rather, those services are ancillary to and supportive of the dialysis services TRC provides. And there is no dispute that the dialysis services were provided in their entirety to patients in Ohio. Indeed, given that R.C. 5751.033(I) puts a spotlight on the purchaser's physical location in determining where to situs a taxpayer's gross

8

receipts, it would be exceedingly strange to conclude that a patient receiving dialysis in Ohio benefits from such service in a physical location other than Ohio.

{¶ 18} A return to our lawn-care example shows how TRC's argument that its laboratory and administrative functions are stand-alone services and that the gross receipts for those services should be sitused outside Ohio is untenable. Imagine once again that you've contracted with a lawn-care company to mow your lawn located in Ohio. But in this example, the company first sends its mowers to a different state to have the mowers' blades sharpened and the company has its payroll and billing services in several other states. And then the company argues that the blade-sharpening and billing services are separate services, despite the fact that those services occur solely to support the lawn-care service that you've purchased and received in Ohio. No one would view paying a company to mow your lawn as also paying for the separate equipment-maintenance or financial services of the lawn-care company. The same thought process applies here. TRC's patients pay for and receive dialysis in Ohio. That TRC undertakes other tasks to provide that healthcare service does not convert those other tasks into services that patients in Ohio pay for separate from the healthcare service and that should be sitused elsewhere.

{¶ 19} Even if we were to accept TRC's argument that the administrative rule should control our analysis here, we would reach the same conclusion. The rule directs that "the physical location where the purchaser ultimately uses or receives the benefit of what was purchased is paramount in determining the proportion of the benefit received in Ohio," unless another provision of the rule specifies otherwise. Ohio Adm.Code 5703-29-17(A). And under Ohio Adm.Code 5703-29-17(C)(28), if a healthcare service is provided entirely in Ohio, then the entirety of the receipts for that service are sitused to Ohio. The "healthcare service" at issue here is dialysis, and that service was provided entirely in Ohio.

**{¶ 20}** In its merits brief, TRC argued that portions of the healthcare services it provided for the relevant period—including laboratory testing and administrative services—were performed outside Ohio, thereby requiring the gross receipts for the provision of those services to be situed outside Ohio. But while laboratory testing and administrative services might have aided TRC in providing dialysis, those functions do not constitute a healthcare service provided in Ohio or received by patients in Ohio. Thus, whether we apply the statute (which looks at the location where the purchaser received the benefit of his or her purchase) or the rule (which looks at the location where the service was performed), we get the same result: TRC provides dialysis services in Ohio, that service is performed entirely in Ohio, and the benefit to the purchasers of that service is received entirely in Ohio. As a result, there is no reason to situs TRC's gross receipts for the relevant period anywhere other than Ohio.

**{¶ 21}** This is not a case in which application of both the rule and the statute lead to conflicting results. If such a situation should arise, the statute would govern. But we are not dealing with a case in which the performance or provision of a healthcare service occurred across multiple states or the benefit of the purchased service was received in more than one state. Our concern here is solely whether the board's use of the statute in denying TRC's request for CAT refunds was unreasonable or unlawful. And we conclude that it was not.

**{¶ 22}** TRC argues in its second proposition of law that it provided sufficient evidence showing the proportion of its services that were performed outside Ohio during the relevant period. Given our resolution of the first proposition of law, we do not need to reach this proposition. Any answer we would provide on the sufficiency of TRC's evidence before the tax commissioner and the board concerning the situsing of laboratory testing and administrative services would have no effect on the outcome of this case and would amount to an advisory

10

opinion. *See Adams*, 2024-Ohio-4640, at ¶ 47 (observing that this court's settled practice is to disfavor issuing advisory opinions).

**{¶ 23}** In sum, the plain language of R.C. 5751.033(I) requires that gross receipts for the CAT be sitused in proportion to the locations where the benefit of the service is received. The only service at issue here is TRC's provision of dialysis to patients in Ohio. Thus, applying the statute, we hold that the entirety of the gross receipts for that service during the relevant periods should be sitused to Ohio, and the board did not err in reaching the same decision.

### III. CONCLUSION

**{¶ 24}** We affirm the Board of Tax Appeals' decision.

Decision affirmed.

_____

Reed Smith, L.L.P., and Paul E. Melniczak, for appellant.

Dave Yost, Attorney General, T. Elliot Gaiser, Mathura Sridharan, and Raina Nahra Boulos, Assistant Attorneys General, for appellee.

_____