[Cite as *Cuyahoga Cty. Bd. of Elections v. Bardwell*, 2025-Ohio-4669.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CUYAHOGA COUNTY BOARD OF
ELECTIONS, ET AL.,

        Plaintiffs-Appellees/
        Cross-Appellants,

        v.

BRIAN D. BARDWELL,

        Defendant-Appellant/
        Cross-Appellee.

:
:
:
:
:
:
:
:

No. 114579

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART
**RELEASED AND JOURNALIZED:** October 9, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-996581

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Mark R. Musson, Assistant Prosecuting
Attorney, *for appellees/cross-appellants.*

Speech Law, LLC, and Brian D. Bardwell, *for
appellant/cross-appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Attorney Brian Bardwell appeals from the trial court's judgment entry
dated October 25, 2024, that granted summary judgment in favor of the Cuyahoga

County Board of Elections and its Director, Anthony Perlatti (collectively "the Board"), on the Board's complaint seeking a declaration that the Board may lawfully dispose of public records that it retained beyond its retention period. The Board cross-appeals from the trial court's interlocutory judgment entry dated September 6, 2024, that granted, in part, Bardwell's motion to dismiss the Board's complaint requesting a declaration that it did not prevent Bardwell from inspecting certain public records. Based on our review of both appeals, we affirm the trial court's judgment granting Bardwell's motion to dismiss but vacate the trial court's declaration that the Board could dispose of the records because the Board's complaint failed to state a valid claim for declaratory relief.

## I.    Factual Background and Procedural History

{¶ 2}    On February 9, 2024, Bardwell, at the request of an undisclosed client, submitted a request to the Board to conduct an in-person inspection of all 75,091 voter ballots and other election records from the August 3, 2021 Special Primary Election.

{¶ 3}    On February 16, 2024, the Board responded, notifying Bardwell which documents were available for an in-person inspection: (1) paper ballots cast, (2) paper poll tapes, and (3) configuration and audit log reports (tapes) from each voting machine. The response further included a photograph depicting a sampling of how the documents were stored — "in boxes weighing approximately 75 pounds stacked on thirteen pallets measuring approximately 3.5' wide by 4' deep by 5.5' high." The response provided parameters necessary to proceed with the inspection

because of the volume of records, the Board's operations regarding the upcoming primary election, and the duty to preserve and maintain the requested records. The conditions included (1) what days and times the records were available for inspection, (2) the maximum number of individuals permitted to conduct the inspection at any given time, (3) advance notice of the scheduled inspection times and the identification of the individuals who would conduct the inspection, (4) a continuous inspection until completed, (5) assigning a Board staff member to pull and return the boxes back to the pallet, (6) only reviewing one box at a time, and (7) prohibiting any markings on the records or passing them through any scanning, copying, or printing devices.

{¶ 4} On February 19, 2024, Bardwell responded, asking whether the Board would permit a scanner specifically designed for ballots, and if not, whether a mobile device could be used to scan the documents. On February 21, 2024, the Board responded by denying the use of a scanner, but permitting the use of a mobile device to take pictures or digital images of the records.

{¶ 5} On February 23, 2024, Bardwell responded, again expressing the desire to use a scanner because of the inspection parameters. He stated that if the Board would not modify the conditions, the inspection would not commence until "May or June" and would take "at least two months" to complete.

{¶ 6} On April 12, 2024, the Board respond to Bardwell's February email, advising that when the inspection commences it would be pursuant to the conditions the Board previously set forth. The record does not reflect that the Board advised

Bardwell that the retention time period had expired regarding the requested records.

{¶ 7} Bardwell responded on April 17, 2024, stating that under the given parameters, the inspection would not begin for another nine months on January 15, 2025. Again, he expressed his desire to use a machine to scan the documents given that the Board was "planning to destroy [them] anyway." At no time during these communications did Bardwell disclose to the Board that he was retained or hired to pursue this records request on behalf of a client.

{¶ 8} On April 26, 2024, nine days after Bardwell's last email and less than three months after Bardwell sent his initial public-records request, the Board filed a complaint against Bardwell, seeking a declaration that (1) the Board had not prevented Bardwell from inspecting the records, and (2) the Board had the right to dispose of the records. According to the complaint, the applicable retention period for the records was 22-months after the August 3, 2021 election, i.e., June 3, 2023.[1]

{¶ 9} Bardwell moved to dismiss the complaint, contending (1) the trial court lacked jurisdiction over the Board's complaint; (2) the complaint failed to adequately plead standing or any of the requirements for declaratory relief; and (3) the complaint proved that the Board violated its obligations under the Ohio Public Records Act and must therefore continue to preserve the records until it permitted Bardwell to inspect them.

---

[1] The Board's complaint alleged that the Board received a prior request for these election records during the applicable retention period, thus preventing the Board from disposing the records.

{¶ 10} In July 2024, Bardwell also filed an answer, raising various defenses and a counterclaim for (1) prohibiting inspection of election records, in violation of R.C. 3599.161, and (2) frivolous conduct in filing civil claims, in violation of R.C. 2323.51. He sought both injunctive relief and money damages. Bardwell's first claim for relief centers around his allegations that on June 24-25, 2024, and July 9, 2024, he personally appeared at the Board of Elections office to inspect specific ballots cast in the August 3, 2021 primary election but was prevented and prohibited from inspecting the requested records. Bardwell's second claim involved whether he was the proper party to the lawsuit because he alleged that the Board knew that he made the records request on behalf of a client.

{¶ 11} The trial court granted Bardwell's motion to dismiss, in part, finding that it lacked subject-matter jurisdiction over the Board's request for a declaration that it did not prevent Bardwell from inspecting the records. The court concluded that the Board's complaint sought a declaration that it had not violated R.C. 149.43, which pursuant to R.C. 2743.75(A), would fall under the exclusive jurisdiction of the Court of Claims. Regarding the Board's second requested declaration, seeking permission to dispose of the requested records, the court found that it had jurisdiction over this requested relief, despite the Board not being an "aggrieved person" to bring an action under R.C. 149.351(B). The trial court did not address Bardwell's additional claim that the complaint failed to adequately plead standing or any of the requirements for declaratory relief. Accordingly, the Board's second request for declaratory relief survived dismissal.

{¶ 12} Subsequently, the Board moved for summary judgment on its remaining request as to whether it could dispose of the election records and on Bardwell's counterclaims. In Bardwell's opposition, he again challenged the court's jurisdiction and the Board's ability to seek declaratory relief, and also raised the issue of whether he was an appropriate party to the action because his clients were the interested party.

{¶ 13} The trial court granted the Board's motion, entering judgment on the Board's remaining claim for relief and on Bardwell's counterclaim. The court noted that Bardwell did not challenge the merits of the Board's second declaration but only continued to advance the arguments regarding the deficiencies in the Board's complaint to maintain the action and that he was not a proper party to the lawsuit. After reviewing the applicable law and retention schedules, the court declared that the Board had "the right to dispose of the Records under R.C. 149.351 based upon the retention policy established by R.C. 3505.31 and rules adopted by the Records Commission." The court did not discuss or make any findings regarding the Board's specific interactions with Bardwell, or whether the Board made the records available for the purpose of Bardwell's inspection.

{¶ 14} Regarding Bardwell's counterclaims, the court determined that Bardwell's actions of inundating the Board with requests and personal appearances at the Board of Elections after the lawsuit was filed were inconsistent with his assertion that he was not the proper party to the Board's lawsuit. Moreover, because Bardwell challenged the Board's purported denial of access to other requested

records, the court concluded that his counterclaim fell under R.C. 149.43, which required Bardwell to either bring his claim through the exclusive jurisdiction of the Court of Claims or through a mandamus action. Accordingly, the court dismissed Bardwell's claim for relief because it lacked subject-matter jurisdiction — much like when the court dismissed the Board's first request for declaratory relief.

{¶ 15} The court further found that the Board was entitled to summary judgment on Bardwell's claim for frivolous conduct because the Board reasonably named Bardwell as a party based on the information Bardwell provided when he initially submitted his request for records and throughout their entire communication. Moreover, the court determined that the Board's request for declaratory judgment did not seek a monetary judgment against Bardwell, and thus the court found no malicious intent by the Board.

{¶ 16} These appeals followed.

## II. The Appeal and Cross-Appeal

{¶ 17} Bardwell appeals, raising the following five assignments of error:

1. The trial court committed reversible error when it exceeded its jurisdiction by granting a declaratory judgment that resolved an alleged violation of [R.C.] 149.43.

2. The trial court committed reversible error when it granted Plaintiffs declaratory judgment against Attorney Bardwell, even though they lacked standing to bring any claim against him.

3. The trial court committed reversible error when it granted Plaintiffs declaratory judgment permitting them to destroy public records, despite genuine issues of material facts as to whether they had fulfilled their obligations to make the records available to those who have requested to inspect or copy them.

4. The trial court committed reversible error when it dismissed Counterclaim 1 for lack of subject-matter jurisdiction.

5. The trial court committed reversible error when it granted Plaintiffs summary judgment on Counterclaim 2 without a hearing, despite genuine issues of material fact as to whether Plaintiffs knew they were suing the wrong party.

{¶ 18} The Board filed a cross-appeal, asserting as its sole cross-assignment of error that if the trial court erred in finding it lacked jurisdiction over Bardwell's first cause of action in his counterclaim, then the trial court had jurisdiction to declare that the Board did not prevent Bardwell from conducting his inspection. The Board clarified at oral argument that its cross-appeal was conditional; if Bardwell was successful in his fourth assignment of error, then the trial court should not have dismissed the Board's first request in its complaint. A court may rely on a party's representations at oral argument in deciding the party's case. *Total Renal Care, Inc. v. Harris*, 2024-Ohio-5685, ¶ 10, citing *Cincinnati Fed. S. & L. Co. v. McClain*, 2022-Ohio-725, ¶ 37.

{¶ 19} Based on our review of the relevant laws, we find merit to Bardwell's first and second assignments of error, both challenging whether the Board's declaratory-judgment complaint should have been dismissed.

{¶ 20} Bardwell moved to dismiss the Board's complaint pursuant to Civ.R. 12(B)(6), contending that the trial court lacked jurisdiction because the Board's complaint sought a declaration that it had not violated R.C. 149.43, which pursuant to R.C. 2743.75(A), could only be pursued through a mandamus action or in the Court of Claims. Bardwell also moved to dismiss the Board's complaint, arguing the

Board lacked standing to obtain declaratory relief and that the Board failed to state a claim because no real justiciable controversy existed between the parties.

{¶ 21} The trial court granted Bardwell's motion to dismiss the Board's first declaration request, finding that the Board's complaint sought a declaration that it had not violated R.C. 149.43, which pursuant to R.C. 2743.75(A), would fall under the exclusive jurisdiction of the Court of Claims. Accordingly, this court limits its discussion to whether the Board had standing to obtain declaratory relief or failed to state a valid claim for declaratory relief.

{¶ 22} It is well established that before an Ohio court can consider the merits of a legal claim, the entity seeking relief must establish standing to sue. *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27. Under common-law principles, standing requires the entity to demonstrate that it has suffered (1) an injury, (2) that is fairly traceable to the defendant's allegedly unlawful conduct, and (3) is likely to be redressed by the requested relief. *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7.

{¶ 23} In addition to standing authorized by common law, standing may also be conferred by statute. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75 (1986). To that end, the Board asserts that it has standing under R.C. 2721.03, a portion of the Declaratory Judgment Act, which applies to

> any person whose rights, status, or other legal relations are affected by a constitutional provision, statute [or] rule . . . may have determined any question of construction or validity arising under the . . . constitutional provision, statute [or] rule . . . and obtain a declaration of rights, status, or other legal relations under it.

The three prerequisites to declaratory relief include "(1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org, Inc.*, 2014-Ohio-2382, at ¶ 19.

{¶ 24} Standing does not turn on the merits of the plaintiff's claims but rather on whether the plaintiff has alleged such a personal stake in the outcome of the controversy that it is entitled to have a court hear the case. *ProgressOhio.org, Inc.*, 2014-Ohio-2382, ¶ 7. Moreover, standing "is not dispensed in gross"; it must be demonstrated for each claim and each form of relief. (Cleaned up.) *Ohioans for Concealed Carry, Inc. v. Columbus*, 2020-Ohio-6724, ¶ 13.

{¶ 25} Even if this court found that the Board had standing to bring this action, the Board's complaint for declaratory judgment fails to state a claim because no real justiciable controversy remained between the parties following the trial court's decision to dismiss the Board's first request for lack of jurisdiction. Accordingly, the court erred in denying Bardwell's motion to dismiss in total.

{¶ 26} The Board's remaining demand requested "a declaration that the [Board] has the right to dispose of the Records." This request did not involve any controversy between the parties, let alone a justiciable controversy. Finding otherwise would necessarily involve whether the Board complied with R.C. 149.43 — an issue that the trial court concluded was outside of its jurisdiction.

{¶ 27} When the court dismissed the Board's first request for relief, the only claim remaining was a request to declare that the Board complied with its retention policy and sought permission to dispose of the records; it did not involve whether it

complied with Bardwell's request or whether the Board made the records available for inspection. In fact, the trial court's subsequent decision did not involve any facts about the requests except that the records responsive to Bardwell's request were contained in the relevant retention schedules. Because the court found that Bardwell did not contest the merits, the court concluded that "the only fact at issue is whether June of 2023 is 22 months after August of 21. It is."[2]

{¶ 28} In its reply to summary judgment, the Board refuted Bardwell's contention that the request to dispose of the records necessarily required a finding of compliance by the Board regarding the requested records. It stated, "[The Board's] requests for declaratory judgment are separate and independent from one another, and not redundant or contingent on each other." We agree that the two requests are completely unrelated in theory, but when the trial court dismissed the Board's first request for relief for lack of jurisdiction, it severed the justiciable controversy between the parties. In fact, the Board noted that its request regarding

---

[2] This court renders no opinion on whether a public agency can utilize a declaratory-judgment action to determine whether it has complied with its public-records retention policy when seeking to dispose of public records. R.C. 149.351(A) provides that

> [a]ll records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code or under the records programs established by the boards of trustees of state-supported institutions of higher education under section 149.33 of the Revised Code.

Moreover, this court renders no opinion regarding whether the Board, pursuant to its retention policies, can dispose of the requested records.

disposal under R.C. 149.351(A) was to "foreclose[] against liability for monetary forfeiture and attorney fees prescribed under R.C. 149.351(B)." To that end, the Board admittedly requested relief to prevent future potential exposure to liability under R.C. 149.43(C)(1). "Courts only have the power to resolve present disputes and controversies, but do not have the authority to issue advisory opinions to prevent future disputes." *Kuhar v. Medina Cty. Bd. of Elections*, 2006-Ohio-5427, ¶ 14 (9th Dist.).

{¶ 29} Based on the foregoing, the trial court erred in failing to dismiss the Board's complaint in total because no justiciable controversy remained following the trial court's dismissal of the Board's first declaration for lack of subject-matter jurisdiction. Bardwell's first and second assignments of error are sustained. His remaining assignments of error and the Board's conditional cross-assignment of error are hereby rendered moot. *See* App.R. 12(A)(1)(c).

## III. Conclusion

{¶ 30} We agree with the trial court that the Board's novel approach is understandable based on the volume and nature of records requested, the conduct displayed by the requesting party, and the need to adhere to its retention policy while recognizing its storage capacity for future records. In fact, at the time of oral argument, it was presented that despite neither party requesting a stay of the trial court's order, the Board did not dispose of the requested records and Bardwell had not initiated his inspection of those records identified in his February 9, 2023 request.

{¶ 31} And this court can appreciate the Board wanting to circumvent these types of requests and delay tactics that could require retention of records in perpetuity. But rather than waiting for Bardwell to file an action pursuant to R.C. 2743.75 alleging a violation of R.C. 149.43 and then asserting the Board's claims as defenses, the Board preemptively sought declaratory relief against Bardwell that it complied with the Ohio Public Records Act and its retention policies. In essence, the Board's filing chose the forum and manner for Bardwell in pursuing any claim challenging a violation of R.C. 149.43. *See* R.C. 149.43(C)(1)(a) and (b) (permits the aggrieved party to choose between pursuing an action in the Court of Claims or a mandamus action in either the court of common pleas, court of appeals, or Supreme Court); *see also* R.C. 2743.75(A).[3]

{¶ 32} During oral argument, the Board stated that it hoped to receive a judicial determination finding its protocol for inspections is reasonable so that it can use that determination against anyone seeking inspection of records. The Board further stated that it requested judicial intervention, needing the help of the courts to advise the Board of their duties and rights and how to proceed in these circumstances. Based on these representations, it appears that the Board is seeking

---

[3] Bardwell cites to case law from North Carolina and California both finding that their respective Public Records Acts do not allow for a government entity to bring a declaratory-judgment action against the requesting party. *McCormick v. Hanson Aggregates Southeast, Inc.*, 164 N.C.App. 459 (2004); *Filarsky v. Superior Court*, 28 Cal.4th 419 (2002).

an advisory opinion from this court.[4]  A court will not indulge in advisory opinions. *Egan v. Natl. Distillers & Chem. Corp.*, 25 Ohio St.3d 176 (1986), syllabus.

{¶ 33} Judgment affirmed in part; vacated in part.

It is ordered that the appellant recover from the appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, P.J., and
DEENA R. CALABRESE, J., CONCUR

_____

[4]During argument, the court questioned the Board whether the guidance it sought would be more appropriate through an Attorney General opinion.  "[T]he Ohio Attorney General provides written opinions on legal questions at the request of designated public officials on issues arising in the course of their duties."  Ohio Attorney General, *Formal Opinions*, https://www.ohioattorneygeneral.gov/About-AG/Service-Divisions/Opinions (accessed Sept. 8, 2025) [https://perma.cc/LD5L-8UD8].